


# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re:

**WILSHIRE COURTYARD,**

                Debtor.

Case No.: 2:97-bk-10771SB

Chapter 11

**OPINION ON
SUMMARY JUDGMENT MOTION**

Date: July 20, 2010
Time: 2:00 p.m.
Ctrm: 1575
Floor: 15th

## I. INTRODUCTION

In this partnership case, the chapter 11[1] plan, confirmed on December 12, 1997, explicitly provides that the plan does not effect a sale of the partners' interests in the partnership property. Nonetheless, the California Franchise Tax Board ("FTB") attempts to recharacterize the plan as a sale of the partnership property at issue, for the purpose of taxing the partners on the income generated thereby. The FTB argues (a) that the court lacks jurisdiction because (i) bankruptcy court jurisdiction terminates at the time of plan confirmation, (ii) the debt is a post-confirmation debt beyond the court's jurisdiction, or (iii) the court has no jurisdiction as to the tax attributes of the non-debtor partners of the debtor partnership; (b) the FTB did not receive constitutionally required notice that its rights would be adversely affected by the confirmation of the chapter 11 plan.

The court holds that the interests of the partners are wholly derivative from the status of the property in the partnership. In consequence, FTB cannot recharacterize the plan transactions at the partner level without recharacterizing them at the

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C.A. §§ 101-1532 (2010) and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

partnership level as well. Because FTB has not brought any such recharacterization application before this court (and cannot because the statute of limitations has run), FTB is prohibited by the plan from claiming that the partners can be taxed on the plan transactions as a sale generating taxable income.

## II. RELEVANT FACTS

Prior to filing for bankruptcy on January 8, 1997, debtor Wilshire Courtyard operated two Class A commercial office buildings and a parking garage located in Los Angeles, California (collectively, the "Properties"). Debtor filed this chapter 11 case on the eve of a scheduled foreclosure by one of its major secured creditors.

The court confirmed debtor's chapter 11 plan by order entered on April 14, 1998. Pursuant to the plan, debtor was restructured from a general partnership into a limited liability company (the "LLC" or "Reorganized Debtor") and continued to own and operate the Properties. The confirmation order specifically provided that the plan and the transactions thereunder "do not provide for, and when consummated will not constitute, the liquidation of all or substantially all of the property of the Debtor's Estate . . . ."

Thereafter, the case was closed on October 22, 1998. The case remained closed for more than a decade, until it was reopened on June 8, 2009 to resolve this dispute.

The court has issued an order to FTB requiring it to show cause why it should not be held in contempt for collaterally attacking and refusing to comply with the plan confirmation order. Debtor has moved for summary judgment.

## III. ANALYSIS

The FTB contends that the transactions that occurred under the chapter 11 plan (the "Plan Transactions") constituted a sale, in substance if not in form, creating capital gain as opposed to cancellation of debt income ("CODI"). The court finds that FTB's attempted recharacterization of the Plan Transactions is a collateral attack upon the confirmation order. In consequence, the court grants summary judgment to the reorganized debtor.

### A. Subject Matter Jurisdiction

FTB argues that the court lacks subject matter jurisdiction in this matter because the dispute arose after confirmation of the chaper 11 plan. However, though a bankruptcy court has more limited subject matter jurisdiction post-confirmation than pre-confirmation, it retains post-confirmation subject matter jurisdiction over matters with a "close nexus" to the bankruptcy case. *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193-94 (9th Cir. 2005). Matters involving "the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.* at 1194. In this case, the determination whether FTB's actions violate the confirmation order involves an interpretation of the confirmed plan, and confers continuing subject matter jurisdiction on the court after plan confirmation.

Further, a bankruptcy court retains subject matter jurisdiction to interpret and enforce its own orders. *See Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 218 (D. Hawaii 2006) ("The law is clear that '[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization'" (citing *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2nd Cir. 2002))). Accordingly, this court retains subject matter jurisdiction to interpret and enforce the chapter 11 plan and the confirmation order.

Finally, FTB argues that the tax issues only pertain to the non-debtor partners as opposed to the debtor partnership, and that this court does not have jurisdiction with respect to these non-debtors. However, because this case involves income tax attributes at the individual partner level that derive directly from the plan confirmation order, the court's jurisdiction extends to this dispute. *See United States v. Bayse*, 410 U.S. 441, 448 (1973) (holding that partnerships are individual taxable entities and conduits through which taxpaying obligations pass to individual partners). Therefore, to make a

determination with respect to the income of non-debtor partners, the court must first determine the nature of income at the partnership level. This determination requires interpretation of the plan and the confirmation order.

### B. California Incorporation of Relevant Federal Tax Law

In 1998, when the debtor's chapter 11 plan was confirmed, § 346(j)(1) provided:

> [e]xcept as otherwise provided in this subsection, income is not realized by the estate, the debtor, or a successor to the debtor by reason of forgiveness or discharge of indebtedness in a case under this title."

Pursuant to § 346(a),[2] § 346(j)(1) applies to CODI for state taxation purposes.

Section 346 (a) incorporates certain provisions of the Internal Revenue Code ("IRC") into bankruptcy cases. IRC § 108(a)(1) provides in relevant part:

> [g]ross income does not include any amount which (but for this subsection) would be includable in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if . . . the discharge occurs in a [bankruptcy] case.

The California Revenue and Taxation Code ("R&TC") also incorporates several relevant provisions of the IRC. Section 17144 incorporates IRC § 108 into California law. In addition, R&TC was revised in 1991 to incorporate § 346 into California state law. *See* GRANT W. NEWTON & ROBERT LIQUERMAN, BANKRUPTCY AND INSOLVENCY TAXATION § 8.4(c) (3d ed. 2005).

### C. Application of Confirmation Order to FTB

---

[2] In 1998, § 346(a) provided: "[e]xcept to the extent otherwise provided in this section, subsections (b), (c), (d), (e), (g), (h), (i), and (j) of this section apply notwithstanding any State or local law imposing a tax, but subject to the Internal Revenue Code of 1986."

The consequences of the confirmation of a chapter 11 plan are provided in § 1141. Subsection 1141(a) provides in relevant part: "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not such creditor has accepted the plan." FTB tries to evade this result.

#### 1. Notice

FTB argues that it is not bound by the chapter 11 confirmation order because it did not receive adequate notice of the chapter 11 bankruptcy case and the plan confirmation. The court finds this argument without merit.

To avoid being bound by the chapter 11 plan on the grounds of insufficient notice, FTB must show that notice was constitutionally deficient. It is uncontested that FTB was served with both a case commencement notice and a notice of entry of the confirmation order.

The due process provisions of the U.S. Constitution prohibit the denial of fundamental fairness in bankruptcy procedures. *See*, *Mullane v. Central Honover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Joye v. Franchise Tax Board (In re Joye)*, 578 F.3d 1070, 1079 (9th Cir. 2009). Notice is constitutionally adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202-03 (9th Cir. 2008).

Fundamental fairness in the bankruptcy context does not require that a creditor receive notice of every event in the bankruptcy case. It is sufficient to give notice of the filing of the bankruptcy case. Such notice puts a creditor "on constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." *Joye*, 578 F.3d at 1079, quoting *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1123 (9th Cir. 1983).

In *Joye*, the court found that the notice, which is sent to all creditors upon the filing of a bankruptcy case, gave the FTB (the same taxing agency involved in this case) adequate notice that the pending chapter 13

3

case may provide for the complete discharge of the debtor's California taxes. In *Gregory*, the court similarly found that the case commencement notice gave the creditor sufficient notice that its rights may be affected by the subsequent chapter 13 plan. Thus, pursuant to *Joye* and *Gregory*, the case commencement notice alone put FTB on constructive or inquiry notice that its claim could be affected by this chapter 11 case.

FTB tries to distinguish *Joye* by pointing to the statement in *Joye* that "[i]f the creditor had made any inquiry following receipt of notice, it would have discovered that it needed to act to protect its interest." *Joye*, 578 F.3d at 1080. FTB argues that, unlike in *Joye*, in this case it would not have been able to discover that its rights were implicated based on the notice of commencement of debtor's bankruptcy case because, at the time it received the case commencement notice, debtor had not filed its plan and there were no documents that would have alerted FTB that its rights were at issue.³

This argument must be rejected on two grounds. First, FTB made exactly this same argument in *Joye*, and lost on it. Second, the Ninth Circuit made clear in *Joye* that the official notice of the commencement of the bankruptcy case provided all of the notice that the FTB was entitled to in a bankruptcy case, and that no further notice of subsequent proceedings in the case was constitutionally required.

Furthermore, FTB received more than simply the case commencement notice. It was also served with a notice of entry of the confirmation order. At that time, FTB could have examined debtor's plan and confirmation order to determine whether its interests were affected thereby. This notice likewise triggered an obligation to make an inquiry to determine whether and to what extent its rights were affected by the reorganization plan.

Had FTB made such an inquiry, it could have brought a motion before the court to rectify any improper or unfair treatment

---

³ In addition, FTB has not presented any evidence that it made any timely inquiry whatsoever into the case.

under the plan. Furthermore, it could have filed a timely adversary proceeding to set aside the confirmation order.

Instead of taking such action, FTB slept on its rights for more than a decade. Even thereafter, FTB still did not make any effort to have the confirmation order modified, and to date has made no such effort.

The court finds that, because FTB received both the case commencement notice and a notice of entry of the confirmation order, the notice provided to FTB was constitutionally adequate and did not deny FTB its due process rights.

### 2. FTB as a Post-Confirmation Creditor

FTB argues it is a post-confirmation creditor because the "tax liabilities at issue did not arise until after the Plan was confirmed," and thus FTB is not bound by the confirmation order. FTB relies on *Holywell Corp. v. Smith*, 503 U.S. 47, 58-59 (1991), which holds that post-confirmation creditors are not bound by a confirmed plan. *See also* 8 COLLIER ON BANKRUPTCY, ¶ 1141.02[1] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev.) ("A plan does not bind parties in interest with respect to postconfirmation claims against the debtor or the debtor's other relationships.").

The court finds that FTB is not a post-confirmation creditor within the meaning of *Holywell*. The principle of *Holywell* applies to debts incurred by a debtor after the confirmation of the reorganization plan, and not to creditors in existence at or before confirmation. FTB's claim clearly arises from the plan itself, and does not qualify as a post-confirmation claim. Thus, "where the liability for the tax was specifically addressed in the plan and the taxing agency was given notice of confirmation and did not object, [1141(a)] bound the taxing agency with respect to taxes on postconfirmation transactions." *Id.* In this case, the plan itself resulted in the ultimate transfer of partnership interests to the LLC, and the confirmation order specified that the transaction was not a sale of all or substantially all of the debtor's estate (which would trigger tax consequences).

Accordingly, even if the plan did not expressly state tax consequences arising from the Plan Transactions, it presented tax issues that the FTB could and should have

4

discovered at the time of confirmation. FTB does not qualify as a post-confirmation creditor and is bound by the confirmation order.

### 3. Revocation of the Confirmation Order

Because FTB is bound by the plan, it is also bound by § 1144, which allows for revocation of an order of confirmation only "[o]n request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing . . . if and only if such order was procured by fraud." Ninth Circuit caselaw makes clear that courts strictly enforce § 1144 and have "no power to extend the time within which the motion to revoke a confirmation plan may be made." See, e.g., In re California Litfunding, 360 B.R. 310, 317 (Bankr. C.D. Cal. 2007) (citing In Orange Tree Assocs., Ltd., 961 F.2d 1445, 1448 (9th Cir. 1992)).

Furthermore, an application to revoke the confirmation of a reorganization plan can only be brought through an adversary proceeding. See Rule 7001(5). FTB did not bring any objection to the confirmation of the plan within the 180-day period provided in § 1144. Such an objection is now barred.

### D. FTB's Actions as a Collateral Attack on the Plan

Because the FTB is bound by the chapter 11 plan, and because it failed to bring a timely action for revocation of the plan confirmation within the allowable period, the action now taken by FTB in contravention to the plan is an impermissible collateral attack on the plan. Debtor contends that FTB collaterally attacks the plan by recharacterizing the Plan Transactions as a disguised sale and by attempting to create income in violation of §§ 346(a) and (j)(1).

#### 1. Collateral Attack Through Violation of §§ 346(a) & (j)(1)

The version of § 346(j)(1) that was in force in 1998 provided that, "[e]xcept as otherwise provided in this subsection, income is not realized by the estate, the debtor, or a successor to the debtor by reason of forgiveness or discharge of indebtedness in a case under this title." Pursuant to § 346(a), § 346(j)(1) applied to CODI for state tax purposes.

Pursuant to the plan and consistent with § 346, debtor received CODI but did not realize the CODI as income. However, FTB argues in its Audit Issue Presentation Sheet ("AIPS"), that the Plan Transactions constituted a sale, at least in substance, and should have been treated by debtor as capital gain. FTB's position would change the CODI into capital gain, which would alter debtor's characterization of the Plan Transactions that was adopted in the plan confirmation order.

FTB argues, to the contrary, it is not attempting to recharacterize the Plan Transactions. It claims that the plan says nothing about taxes and that it is not precluded from determining that the Plan Transactions were a sale for tax purposes. FTB argues that a partnership is not a taxable entity, and only partners incur tax liabilities from partnership income. Accordingly, any CODI would only benefit partners, not the debtor partnership, which FTB argues would be contrary to Congress' intent.

However, California adopted the taxable entity theory in United States v. Bayse, 410 U.S. 441 (1973), which confirms that a partnership is an independently recognizable entity for purposes of taxation determinations. Bayse, 410 U.S. at 448 n.8 (partnership entities are "conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares."). Because partnerships are themselves taxable entities, the application of § 346(j)(1) to debtor partnerships is appropriate.

#### 2. Collateral Attack Through Recharacterization of Plan Transactions at the Partner Level

In the alternative, FTB contends that its true quarrel is with the tax treatment of the partners, not the partnership. Specifically, FTB argues that the partners' collective transfer of 99% of their partnership interests to the LLC should be treated as a taxable sale of partnership interests. The partners reported flow-through CODI on their 1998 California income tax returns but excluded this income under IRC § 108(a)(1)(D).

FTB relies on *Stackhouse v. United States*, 441 F.2d 465 (5th Cir. 1971), to argue that the partners should have recognized income pursuant to IRC §§ 752(b) and 731(a)(1) to the extent that any constructive distribution of money from the partnership resulting from CODI exceeded a partner's tax basis in his partnership interest. The FTB contends that, even if the partnership does not recognize CODI, an individual partner may still be required to recognize the partner's distributive share of the passed-through CODI.

FTB acknowledges, however, that *Stackhouse* was legislatively overturned by the Bankruptcy Tax Act of 1980 (the "1980 BTA"). *See* Legislative History of the Bankruptcy Tax Act of 1980: P.L. 96-589: 94 Stat. 3389: Dec. 24, 1980, n.26. Despite this acknowledgement, FTB fails to apply properly the effect of the 1980 BTA to this case. FTB discusses the basis effects of IRC §§ 752(b) and 731(a)(1), but does not account also for the offsetting basis effects of IRC §§ 702(a) and 705. Footnote 26 to the legislative history of the 1980 BTA states:

> [I]ncome from discharge of a partnership debt is not excludable at the partnership level under amended section 108. Instead, such income is treated as an item of income which is allocated separately to each partner pursuant to section 702(a) of the Code. This allocation of an amount of debt discharge income to a partner results in that partner's basis in the partnership being increased by such amount (sec. 705). At the same time, the reduction in the partner's share of partnership liabilities caused by the debt discharge results in a deemed distribution (under sec. 752), in turn resulting in a reduction (under sec. 733) of the partner's basis in the partnership. The section 733 basis reduction . . . offsets the section 705 basis increase . . . .

Accordingly, when there is cancellation of indebtedness at the partnership level, the partner's basis is both reduced by the amount of the debt discharge and increased by the amount of the passed-through CODI, creating a complete offset. Accordingly, there is no realized taxable income, even at the partner level, when a partnership does not realize CODI. In the instant case, debtor did not realize CODI pursuant to § 346(j)(1). Thus, the partners did not realize their distributive shares of CODI with respect to their 1998 taxes.

FTB's attempt to recharacterize the transfer of partnership interests to the LLC as a disguised sale would nullify the effect of the 1980 BTA at the partner level in a CODI scenario and would ignore the interplay between § 346 and relevant IRC provisions allowing debtor to exclude CODI from its realizable income. Such a recharacterization constitutes a collateral attack upon the confirmation order and cannot be permitted.

### E. Contempt of Court

Contempt is an appropriate remedy for violation of a court order. A bankruptcy court has inherent power to impose sanctions pursuant to § 105, which authorizes remedies that are "necessary and appropriate to carry out provisions of this title."

FTB argues that it cannot be found in contempt because there is no court order mandating that it do anything. This argument is well taken – contempt is not the appropriate remedy at this time.

### IV. CONCLUSION

This court finds that the Plan Transactions resulted in discharge of indebtedness and not a disguised sale resulting in capital gain. Pursuant to the taxable entity theory adopted in *United States v. Bayse*, 410 U.S. 441 (1973), tax liabilities are determined at the partnership level and flow through to individual partners. Accordingly, Wilshire Courtyard's CODI was properly excluded at the partnership level pursuant to § 346(j)(1), which provides that CODI is not realized as income in a bankruptcy case. Further, pursuant to the 1980 BTA, the partners properly excluded the passed-through CODI from their individual tax returns. FTB's attempt to recharacterize the CODI as a disguised sale at either the debtor-partnership or individual partner level

constitutes an improper collateral attack upon the confirmation order.

In consequence, FTB is hereby ordered to cease its efforts to collect taxes from debtor or the partners on the claim that the Plan Transactions constituted a sale.

Dated: August 31, 2010

_____
Hon. Samuel L. Bufford
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM:**
1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **OPINION ON SUMMARY JUDGMENT MOTION** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of August 31, 2010, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

David Gould, Esq.            dgould@davidgouldlaw.com
Lewis R. Landau, Esq.        lew@landaunet.com
United States Trustee        ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

**ADDITIONAL SERVICE INFORMATION** (if needed):